UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANN CARDENAS,

                      Plaintiff,              **THIRD AMENDED COMPLAINT**

        - against -

                                        Jury Trial Demanded
                                        Index No:
                                        1:15-cv-06046-KAM-JO

THE CITY OF NEW YORK,
SERGEANT DAVID JOHN, and
POLICE OFFICER ANGEL COLON,
sued in their individual capacities,

                      Defendants.
------------------------------------------------------------------X

      Plaintiff, by her attorney, Fred Lichtmacher of the Law Office of Fred Lichtmacher, P.C,

complaining of the Defendants herein, respectfully alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is founded upon the existence of a Federal Question.

2. This action arises under 42 U.S.C. §2000e-2(a) and §2000e-3(a), i.e., Title VII, as well as under the Administrative Code of the City of New York § 8-107 et seq.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(3&4).

4. Subject matter jurisdiction is conferred by 28 U.S.C. §§ 1331 & 1343 (a)(3 & 4).

5. Pursuant to 28 U.S.C. § 1391(b)(2), venue is permissible in the Eastern District of New York because the events forming the basis of the Complaint occurred in this District.

1

6. Plaintiff Ann Cardenas invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

## PARTIES

7. Plaintiff Ann Cardenas (hereinafter, Cardenas) is a female employee of the City of New York, and at all times relevant she was employed as a Police Officer by the New York City Police Department (hereinafter, the NYPD).

8. Defendant City of New York is a Municipal Corporation within New York State. Pursuant to its Charter, the City of New York has established and maintains the NYPD as a constituent department or agency and at all times relevant, the City of New York employed the personnel involved in the incidents underlying this lawsuit as members of the NYPD.

9. Defendant City of New York, through its Department, employs more than five hundred employees for each working day in each of twenty or more calendar weeks in the current, preceding and in all relevant calendar years.

10. Defendant Sergeant David John (hereinafter, John) was at all times relevant, a duly appointed and acting Sergeant employed by the NYPD and at all times relevant was the Plaintiff's direct supervising officer largely responsible for the terms and conditions of her employment.

11. Defendant John, was at all times relevant, an agent, servant and employee acting within the scope of his employment with the City of New York.

12. Defendant Police Officer Angel Colon (hereinafter, Colon), was at all times relevant, a duly appointed Police Officer employed by the NYPD and a co-worker working along side the Plaintiff and at all times relevant he was acting within the scope of his employment with the City of New York.

## NATURE OF THE ACTION

13. This civil rights action arises from an ongoing campaign of sexual harassment against Police Officer Ann Cardenas by her direct supervisor, Defendant Sergeant David John and subsequently by John's friend and Cardenas's co-worker Defendant Police Officer Angel Colon.

14. Many of the actions alleged here were known about by supervising officers of the NYPD who allowed the two individual Defendants' actions to continue unabated.

## CONDITIONS PRECEDENT TO SUIT

15. On or about January 14, 2014, Ms. Cardenas submitted a complaint with the EEOC under charge number 520-2014-00964, within 300 days of the last discrete act, complaining of ongoing acts of discrimination.

16. On or about February 26, 2014, Ms. Cardenas submitted a Supplemental Charge of Discrimination to the EEOC.

17. Subsequently, Ms. Cardenas received a Notice of Right to Sue letter from the EEOC dated August 29, 2014.

18. This action was commenced within 90 days of receipt of the right to sue letter.

## NOTICE OF CLAIM

19. On or about January 28, 2014 and within the time prescribed by law, a Notice of Claim was timely served upon the City of New York.

20. More than thirty (30) days have elapsed, the City of New York has failed to make any adjustment or payment thereof.

21. The City of New York completed its General Municipal Law 50-h hearing of Ms. Cardenas on April 7, 2014.

22. The supplemental tort claims herein were commenced within the time periods prescribed by the laws of the State of New York.

## FACTUAL BACKGROUND

23. Ms. Cardenas is employed by the NYPD and was assigned to the 83rd Precinct, located at 480 Knickerbocker Avenue, Brooklyn, New York, at all times relevant herein.

24. Ms. Cardenas is a female who was appointed to the NYPD on January 17, 2008.

25. At all times relevant herein, Ms. Cardenas held the rank of Police Officer, and worked the day tour with Defendant John as her direct supervisor in the "Conditions Unit" and during the acts complained of committed by Defendant Colon, Ms. Cardenas was that Defendant's co-worker.

26. Defendant John, as a Sergeant and supervisor, had the authority to make tangible employment decisions directly effecting the terms and conditions of Ms. Cardenas's employment, including, but not limited to, issuing her direct commands, changing her assignments, changing her tours, granting or denying her overtime, issuing recommendations for her to be transferred or promoted, issuing her Command Disciplines and otherwise commencing disciplinary proceedings against Ms. Cardenas.

27. Beginning in July 2012, Ms. Cardenas was assigned to the "Conditions Unit" and she was the

only female in the squad.

28. During the precinct 2012 Christmas party at a Mediterranean restaurant, Defendant John said in Ms. Cardenas's presence to Ms. Cardenas's friend, "You're ugly but I'll still fuck you."

29. A few months later, Defendant John said to Ms. Cardenas, in front of another sergeant, that she should sit on his face.

30. Prior to the spring of 2013, Defendant John had been highly inappropriate, but as of the spring of 2013, his degree of misconduct and its rate of occurrence escalated and his behavior became severely disturbing and intolerable.

31. Defendant John repeatedly called Ms. Cardenas his "work pussy" while driving in their NYPD car, in the station house, as well as in public.

32. While in a 7-11 getting coffee, Defendant John told the clerk "don't look at my muffin" and grabbed Ms. Cardenas's butt without Ms. Cardenas's consent and she immediately pushed him away.

33. In front of Ms. Cardenas, Defendant John called the 7-11 employees "faggots" and told them that he would "fuck them up the ass."

34. On numerous occasions Defendant John grabbed Ms. Cardenas's buttocks and thighs, always without her permission and in spite of her repeatedly telling him to stop.

35. Defendant John constantly greeted other male officers in the precinct and at the front desk where members of the public were present, with "What's up … get your dick sucked?" or "get your dick sucked today?"

36. While driving on the job Defendant John would repeatedly comment on females he saw and often stated multiple times a day "I want to get my dick sucked" or "can I smell your muffin?"

37. On June 18, 2013 Defendant John handcuffed Ms. Cardenas in the Conditions office, without her permission, without a legal justification and over her objection.

38. In the summer of 2013, while Ms. Cardenas was in the precinct sitting on the couch in the conditions unit room, Defendant John grabbed her, threw her down, and held her down while trying to kiss her.

39. Soon thereafter, Defendant John climbed on top of Ms. Cardenas and would not let her up.

40. In 2013, on multiple occasions, Defendant John forced Ms. Cardenas down and climbed on top of her and did not allow her to get up.

41. In the summer of 2013 Defendant John stated that he "knows people" on the job and that he is "untouchable."

42. Defendant John would regularly refer to himself as "Kingditions Sergeant" making it clear that he believed no one could, or would, question his actions or his authority.

43. Defendant John stated in front of Ms. Cardenas that he was going to make his wife "look bad in court for the slut she is" and he admitted and bragged about having shoved her.

44. Defendant John said that she "knew better than to call the cops" and "she wouldn't have gotten a penny from me if she did."

45. Defendant John spoke about hitting his first child's mother and he openly stated, "look what ended up out of me hitting my first baby momma, I got modified but that fat bitch knew that

she'd be losing money for the kid so that went nowhere."

46. At one time Defendant John took all the sergeants' Sergeant's Benevolence Association ("SBA") cards and when he was approached by a fellow sergeant he said "what are you gonna do?" and said to Ms. Cardenas, "Ann, see? don't fuck with me."

47. Defendant John repeatedly told officers in the precinct, including in front of Ms. Cardenas, that their wives were cheating on them "getting big black cock" and that they would be stupid not to do the same.

48. Prior to being assigned to the 83rd Precinct, Ms. Cardenas was on modified duty in Manhattan as a result of an incident between her ex-boyfriend and a male officer she was dating at the time.

49. Defendant John told Ms. Cardenas that "women are all dirty sluts" and that "women will always look bad on this job because they can try to be one of the boys but it will never work."

50. Defendant John bragged saying "look what I did to [a female officer]. I loved her. Bitch started seeing other guys and I wasn't having that. When I went down to the EEO office they all laughed and said 'yea bro, don't worry, we all know she is a slut.'"

51. Defendant John would call his then-wife and verbally abuse her over the phone while on speaker and then tell Ms. Cardenas that "all women are sluts."

52. Defendant John bragged saying "I've been cheating on her since the beginning and I'm going to fuck one of her friends."

53. Defendant John showed Ms. Cardenas a photo of his then-wife's friends, pointed to a woman and said "this one lost so much weight I'm gonna fuck her" and he added, "that bitch thinks

I take these pictures as group pictures but it's to look at her friends and rub one out."

54. When a new female Sergeant was assigned to the command, Defendant John said to Ms. Cardenas "I want to fuck her. I'm going to fuck her."

55. Defendant John also showed Ms. Cardenas pictures of his penis and asked "is this big? It's bigger than your boyfriend's."

56. In late 2013, Defendant John would constantly grab Ms. Cardenas and say "that's mine." When she told him to stop, Defendant John would say "you always let me, don't you freaking move my hand" in spite of the fact that she quite literally never consented to him touching her.

57. Defendant John told Ms. Cardenas that he had pictures of all the female officers, including her, and that he liked her Halloween costume that she posted on Facebook and that he masturbated to the picture.

58. Defendant John would frequent a toy store while on duty and would say to the Asian woman who worked there "me love you long time" under his breath.

59. At work in November 2013, Defendant John took a picture of his penis next to Ms. Cardenas's face which he shot when she had been resting her eyes with a jacket over herself during her break.

60. Defendant John showed Ms. Cardenas a photo of his penis in another police officer's lunch box.

61. Defendant John would often take photos of unsuspecting female officers, including zooming in on their breasts and butts.

62. Defendant John would ask officers "how much [money] to watch your mom get pounded by a black guy?"

63. Defendant John asked officers to choose either their mother or their wife to be raped.

64. In November 2013, Defendant John tried to touch Ms. Cardenas's inner thigh, she pushed him away and he asked "do you like banana?" and began petting her and saying "good banana, good banana."

65. On December 16, 2013, Defendant John grabbed the cleaning-woman in the precinct, he smacked her butt and kissed her on the lips and he then threw garbage on the floor and told the woman to "pick it up, you're a cleaning lady" and he followed up with racial slurs.

66. A short while later he smacked Ms. Cardenas's behind and forcefully kissed her in front of fellow Conditions Unit colleagues without her consent.

67. Also during December 2013, Defendant John said to Ms. Cardenas, "I'm going to bust all over your face" while simulating ejaculating.

68. Defendant John said to Ms. Cardenas "I'd love to come all over your ass" in front of a fellow police officer.

69. In 2013 Defendant John also told Ms. Cardenas to "take advantage now when you're young, when you're old no one will" and played a rap song on his phone - he put the phone by Ms. Cardenas's ear and sang along with the lyrics which stated that "Bitches ain't shit, but hoes and tricks."

70. Defendant John also repeatedly told Ms. Cardenas that if she waits to have children she will have "retarded" children like a female sergeant in the precinct.

9

71. Defendant John constantly called Ms. Cardenas a "dumb bitch" and "stupid slut."

72. Defendant John told Ms. Cardenas that she "needed a nose, tit and hairline job."

73. Defendant John would say to the entire team that an officer's "mother is getting fucked right now by the Lieutenant…he's probably his bastard child."

74. Defendant John asked an officer whether he ever hears his "mom getting pounded by the Lieutenant through his bedroom wall."

75. Defendant John cursed out an emotionally disturbed immigrant male on the street, including calling him a "faggot," and "immigrant fuck" and said that he "fucked his mother."

76. Defendant John often pulled his pants down in front of Ms. Cardenas and he often slept in the office with his belt undone, and would then pull his pants down, grab his groin and say to Ms. Cardenas, "Ann, hold this for me" and would do this in front of other officers.

77. On one occasion, Defendant John was trying on uniforms in the fitting room of a police equipment shop and exited with his pants down and said to Ms. Cardenas "Ann, fix this."

78. Defendant John would grab Ms. Cardenas and push her against the wall and grind his body against her while making grunting sounds and he even pinned Ms. Cardenas as she was searching a vehicle and said "oh yea you like this…let me grab that muffin." Ms. Cardenas tried to escape from his grasp and turned around at which point he grabbed her breast and put his open mouth on her neck and cheeks.

79. After an officer Defendant John was intimately involved with told him she was no longer interested in him, he got upset and when he suspected she began dating a different officer he approached that officer and asked "How do I taste?"

80. Another time, while Ms. Cardenas was engaged in a conversation with a male officer, Defendant John interrupted and told him to stop talking to Ms. Cardenas, he then told the officer he was "stupid to have gotten married" because "Did you think you were gonna be the last cock she got?"

81. On one occasion when the team had arrested a prostitute, Defendant John stated "This one I would definitely let suck my cock."

82. At his own mother's wake following her passing, Defendant John made inappropriate sexual comments about the females in attendance.

83. Once, while attending a female officer's wedding, Defendant John began to sexually harass some of the guests, including a female officer sitting at an adjoining table. A female sergeant from the 83rd Precinct confronted Defendant John and told him to stop. Defendant John doused her with water. Afterwards, Defendant John began bragging in the precinct about how he had doused the female sergeant and said that she was jealous that he was not doing it to her and that she was ugly.

84. Defendant John threatened to retire, "load up on HGH and go to Ann's [Ms. Cardenas] house and rape her."

85. Defendant John stated that he had the best career and did whatever he wanted and that if he was to come back to the precinct high from weed and in his underwear, let officers try to arrest him and "we will see, I'll rape you in the street."

86. Once, Defendant John picked up his seventeen year old son in a police vehicle and out of uniform after visiting the pension section and began to touch Ms. Cardenas inappropriately in front of his son. Ms. Cardenas repeatedly told him to stop. Defendant John said "my son knows how I am, you should hear the shit I say about his hot girlfriend, especially the one he

took to prom."

87. On one occasion, a day tour Lieutenant told Defendant John to stop sexually harassing the female desk sergeant. John called Ms. Cardenas later that day and tried to force her to file a false complaint against the Lieutenant and to allege that he made her feel uncomfortable.

88. Supervisors witnessed and/or were informed of Defendant John's behavior yet they took no action against him and allowed him to continue harassing people.

89. Defendant John has had prior complaints lodged against him, yet the NYPD has failed to take any action.

90. In early 2014, Sergeant Mercado took over the "Conditions Unit" upon Defendant John's retirement.

91. Ms. Cardenas informed Mercado that Defendant Colon constantly harassed her and that she feels uncomfortable working together with him, but no remedial action was taken.

92. In early January of 2014, Ms. Cardenas was at or around the front desk in the presence of a superior officer when Defendant Colon stated within earshot of the supervisor to Ms. Cardenas that he would rape her. She said "excuse me?!!" He said "uh, but in a good way."

93. Ms. Cardenas was told by her supervisors on several occasions, to 'relax" that Defendant Colon is just a "perv."

94. In 2013, Defendant Colon forcibly squeezed Ms. Cardenas's buttocks without Ms. Cardenas's permission and she took great offense.

95. On January 9, 2014, while Ms. Cardenas was in the precinct, Defendant Colon began to gaze

at Ms. Cardenas's buttocks area and began to speak about her buttocks, stating that it was round and big and that he would love to do things to Ms. Cardenas and be a part of it and he wants to squeeze it again.

96. Defendant Colon returned a minute later and began to speak again about things he would love to do to Ms. Cardenas.

97. At around 3:40 p.m. on the same day, Defendant Colon came up to Ms. Cardenas from behind and grabbed her waist and squeezed her against his body whispering in Ms. Cardenas's ear that he "wanted" her; this happened in front of supervisors who took no action.

98. Defendant Colon was transferred to Conditions, despite Ms. Cardenas specifically informing her supervisor that he had been harassing her.

99. Defendant Colon made sexually offensive comments about Ms. Cardenas in front of their supervisor, including that he wanted to touch her anus, but the supervisor ignored the comments and took no action.

100. As a result of hostile work environment Ms. Cardenas has been subjected to, she has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight gain, loss of hair, depression, loss of sleep, she has sought treatment from healthcare professionals, it has effected her ability to perform at work, it has effected the way she feels about her career and that she was otherwise harmed.

**PLAINTIFF'S FIRST CAUSE OF ACTION**
FIRST CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK
VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO
TITLE VII, 42 U.S.C. §2000e-2(a) and §2000e-3(a)

101. Ms. Cardenas repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

102. By the actions described above, Ms. Cardenas was deprived of her rights secured by Title VII, i.e., 42 U.S.C. §2000e-2(a) and §2000e-3(a), including, but not limited to her right to be free from discrimination based on gender, from being sexually harassed and she has been subjected to a severely hostile work environment, by her supervisors' actions and inactions, in that Defendant John, her immediate supervisor harassed her on an ongoing basis and that said harassment was ignored by other supervisors who witnessed, observed, were told of and otherwise knew of said ongoing harassment.

103. The hostile work environment Ms. Cardenas was subjected to was both severe and pervasive.

104. Defendant John was in a position to, and did in fact, adversely affect the terms and conditions of Ms. Cardenas's employment.

105. Defendant City of New York knew of and disregarded Defendant John's propensity to harass and annoy employees based on gender.

106. The hostile work environment Ms. Cardenas was subjected to was ongoing from the time she began working under Defendant John and it became increasingly hostile and never abated through the time he retired and therefore, Ms. Cardenas is entitled to the benefit of the ongoing violation doctrine.

107. After Defendant John retired, the ongoing harassment continued at the hands of Defendant Colon, with the full knowledge of the supervisors, who took no action to discourage or punish Colon's acts.

108. As a result of sexual harassment, the gender discrimination and the hostile work environment Ms. Cardenas has been subjected to, she has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight gain, loss of hair, depression, loss of sleep, she has sought treatment from healthcare professionals, it has effected her

ability to perform at work, it has effected the way she feels about her career and that she was otherwise harmed.

109. As a consequence thereof, Ann Cardenas has been injured and she is entitled to compensatory damages of not more than ONE MILLION ($1,000,000.00) DOLLARS, as well as an award of attorney's fees, costs and expenses.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
VIOLATION OF PLAINTIFF'S RIGHTS
PURSUANT TO THE ADMINISTRATIVE CODE OF THE CITY OF
NEW YORK, §§ 8-107 et seq., and 8-502(a) against
DEFENDANTS THE CITY OF NEW YORK,
SERGEANT DAVID JOHN, and P.O. ANGEL COLON

110. Ms. Cardenas repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

111. By the actions described herein, Ms. Cardenas was deprived of her rights secured by New York City Administrative Code §§8-107 et seq., and 8-502(a) including, but not limited to her right to be free from discrimination based on her gender, free from sexual harassment and free from a hostile work environment.

112. Ms. Cardenas was subjected to gender discrimination that created an intimidating, hostile and offensive working environment.

113. Defendant John, by his perverse, unwelcome actions, discriminated against Ms. Cardenas based on her gender and he subjected Ms. Cardenas to a hostile work environment due to his

15

discriminatory and harassing behavior.

114. Defendant John was in a position to and did in fact adversely effect the terms and conditions of Plaintiff's employment in that he controlled the day to day assignments she had and he generally controlled the work environment to which she was subjected.

115. Defendant Colon, by his perverse, unwelcome actions, discriminated against Ms. Cardenas based on her gender and he subjected Ms. Cardenas to a hostile work environment due to his discriminatory and harassing behavior.

116. Defendant City of New York is liable to Ms. Cardenas because it knew of, disregarded and failed to take any, much less immediate and appropriate corrective action in response to Defendants John and Colon's harassing activities, even though Defendant John was a supervisor and even though Defendant Colon and Defendant John's actions were witnessed by supervisors, who failed to act.

117. As a result of sexual harassment, gender discrimination and the hostile work environment Ms. Cardenas has been subjected to, she has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight gain, loss of hair, depression, loss of sleep, she has sought treatment from healthcare professionals, it has effected her ability to perform at work, it has effected the way she feels about her career and that she was otherwise harmed.

118. As a consequence thereof, Ann Cardenas has been injured and she is entitled to compensatory damages of not more than ONE MILLION ($1,000,000.00) DOLLARS as well as awards of punitive damages against Defendants John and Colon in amounts to be determined by the trier of fact, and Ms. Cardenas is entitled to an award of attorney's fees as well as costs and expenses of this action to be assessed against all Defendants.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered as follows:

(A) Declaratory relief as follows:

1. A declaration that Plaintiff's right under Title VII, i.e., , 42 U.S.C. §2000e-2(a) and §2000e-3(a) were violated;

2. A declaration that Plaintiff's rights under New York City Administrative Code §8-107 et seq., and §8-502(a) were violated;

(B) Compensatory damages in an amount of not more than ONE MILLION ($1,000,000.00) DOLLARS;

(C) By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages from the individual Defendants in amounts to be fixed at trial;

(D) An award to Plaintiff of the costs and disbursements herein;

(E) An award of attorney's fees under the relevant statutes, including but not limited to 42 U.S.C. §2000e-5K and New York City Administrative Code §8-502(f); and

(F) Such other and further relief as this Court may deem just and proper.

Dated: November 2, 2015
       New York, NY

                                       By: _____/ s /_____
                                              Fred Lichtmacher, Esq.
                                              *Attorney for Plaintiff*
                                              The Law Office of Fred Lichtmacher, P.C.
                                              2 Wall Street, 10th Floor
                                              New York, NY 10005
                                              (212) 922- 9066


To:     Michael Friel Fleming
          New York City Law Department
          Attorneys for the City of New York and Defendant Colon
          100 Church Street
          Room 2-169
          New York, NY 10007


cc:     Anthony DiFiore
          The Quinn Law Firm
          Attorneys for Defendant John
          399 Knollwood Road, Suite 220
          White Plains, NY 10603


cc:     Moshe C. Bobker
          Cronin & Byczek, LLP
          1983 Marcus Avenue, Suite C120
          New Hyde Park, NY 11042